[Nos. B210720, B210716, B210719, B210726, B210730. Second Dist., Div. Three. Sept. 8, 2010.]

MARCO GARCIA et al., Plaintiffs and Appellants, v.
FOUR POINTS SHERATON LAX et al., Defendants and Respondents.
[And four other cases.]†

†See footnote 2, *post*, page 371.

COUNSEL

Hadsell Stormer Keeny Richardson & Renick, Randy Renick, Cornelia Dai; Davis, Cowell & Bowe, Elizabeth Ann Lawrence, Sarah Varela, Winifred Kao and Richard G. McCracken for Plaintiffs and Appellants.

Carmen A. Trutanich, City Attorney (Los Angeles), Claudia McGee Henry, Assistant City Attorney, and Gerald M. Sato, Deputy City Attorney, for City of Los Angeles as Amicus Curiae on behalf of Plaintiffs and Appellants.

O'Melveny & Myers, Scott H. Dunham, Apalla U. Chopra and Benjamin J. Kim for Defendants and Respondents Renaissance Montura Hotel Los Angeles, Marriott International, Inc., Marriott LAX, Marriott Hotels and Resorts, Diamond Rock Hospitality and Sunstone Hotel Investors, Inc.

Littler Mendelson and Robert S. Blumberg for Defendant and Respondent Pacifica Host Hotels, Inc.

OPINION

**ALDRICH, J.—**

## INTRODUCTION

In this appeal, we address the validity of the Hotel Service Charge Reform Ordinance (Ordinance) enacted by the City of Los Angeles (the City), requiring nonunionized hotels in the Century Corridor near Los Angeles International Airport (LAX) to pass along mandatory service charges to workers who render the services for which the charges have been collected. The Ordinance is based upon the City's determination that LAX-area hotels reap economic benefits from their location and have the responsibility and ability to pay these workers a decent compensation. Service workers have seen their income decline as a result of the hotels' practice of imposing mandatory service charges because patrons assume these charges are paid to the workers and therefore do not leave them a gratuity.

Appellants are service workers who challenge the trial court's dismissal of their lawsuits to enforce the Ordinance on the grounds that it is preempted by Labor Code sections 350 through 356, which govern the disposition of gratuities. Appellants contend the Ordinance does not conflict with the Labor Code because it neither contradicts the Labor Code nor enters the field of regulating gratuities. Although not addressed by the trial court, appellants also contend the Ordinance does not violate the equal protection clauses of the

federal and state Constitutions, is not void for vagueness under the due process clause, and is not an unconstitutional taking.

We conclude the Labor Code does not preempt the Ordinance because the Labor Code provisions regulating gratuities are not irreconcilable with the Ordinance, and the Legislature has not demonstrated its intent to regulate in the field of service charges. We further conclude there is no equal protection violation under the deferential, rational basis standard, and the Ordinance is not otherwise constitutionally infirm. Therefore, we reverse the judgments of dismissal entered following the trial court's order sustaining the demurrers to the complaints without leave to amend.

## BACKGROUND

In 2006, the City enacted the Ordinance to increase the compensation of workers performing services at airport hotels. The Ordinance requires hotels with 50 or more rooms within the Gateway to Los Angeles Property Business Improvement District (Century Corridor PBID) adjacent to LAX (hereafter Corridor), to pass along service charges to those hotel workers who render the services for which the charges are collected. (L.A. Ord. No. 178084, adding art. 4, ch. XVIII, § 184.00 et seq. to L.A. Mun. Code (LAMC).)

Plaintiffs and appellants are banquet captains and servers at Corridor hotels.[1] They filed separate class action complaints against certain hotels[2] for violations of the Ordinance and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL). The complaints are similar and allege the

---

[1] Appellants are Marco Garcia, Gerardo Chavez, Jose Antonio Lozano, and Robin Waner. They filed separate actions in the trial court. (*Garcia v. Four Points Sheraton LAX* (Super. Ct. L.A. County, 2008, No. BC377059); *Chavez v. Marriott LAX* (Super. Ct. L.A. County, 2008, No. BC377062); *Chavez v. Renaissance Montura Hotel Los Angeles* (Super. Ct. L.A. County, 2008, No. BC377060); *Waner v. Radisson Hotel LAX* (Super. Ct. L.A. County, 2008, No. BC377065); and *Lozano v. Hilton Los Angeles Airport* (Super. Ct. L.A. County, 2008, No. BC377063).)

[2] The respondent hotels include Renaissance Montura Hotel Los Angeles, Marriott International, Inc., Marriott LAX, Marriott Hotels and Resorts, Diamond Rock Hospitality, and Sunstone Hotel Investors, Inc., defendants in *Chavez v. Marriott LAX* (Super. Ct. L.A. County, 2008, No. BC377062), and *Chavez v. Renaissance Montura Hotel Los Angeles* (Super. Ct. L.A. County, 2008, No. BC377060); Four Points Sheraton LAX, LAX Hotel Ventures, American Property Management Corp., Hilton Los Angeles Airport, Hilton Hotel Corporation, and Fortuna Enterprises, defendants in *Garcia v. Four Points Sheraton LAX* (Super. Ct. L.A. County, 2008, No. BC377059), *Waner v. Radisson Hotel LAX* (Super. Ct. L.A. County, 2008, No. BC377065), and *Lozano v. Hilton Los Angeles Airport* (Super. Ct. L.A. County, 2008, No. BC377063); and Pacifica Host Hotels, Inc., a defendant in *Waner v. Radisson Hotel LAX* (Super. Ct. L.A. County, 2008, No. BC377065).

hotels own, control, or operate a hotel located within the Corridor.[3] The hotels allegedly failed to compensate plaintiffs and members of the putative class in the amount of the entire service charge as defined in the Ordinance.

Several hotels joined in a demurrer to the complaint,[4] contending the Ordinance (1) is preempted by Labor Code sections 350 to 356,[5] which regulate gratuities; and (2) is unconstitutional in that it violates the equal protection clauses of the state and federal Constitutions, is void for vagueness, and amounts to a taking without just compensation.

The trial court agreed that the gratuity provisions preempted the Ordinance and did not reach the constitutional issues. The trial court concluded the Ordinance contradicted the Labor Code. It reasoned the gratuity statutes in the Labor Code set a "boundary between moneys which . . . belong to the employees, individually or jointly," and have "served as a bright-line distinguishing the validity of competing claims (from business owner and worker) to moneys provided by the customer." Based upon section 351, governing the disposition of gratuities (to the employee), the definition of "gratuity" in section 350, subdivision (e), and prior versions of the gratuity statutes, the trial court concluded the "employee does not have any claim to ownership in payments made by patrons which fall outside the definition of 'gratuity.' The vice of the Service Charge Ordinance is that it tries to do exactly this. It attempts to give the employees an ownership interest in mandatory charges added by the hotel . . . ." On that basis, the trial court sustained the demurrers without leave to amend and entered judgments of dismissal. Plaintiffs timely appealed, and we consolidated the appeals.

## DISCUSSION

We consider two separate legal issues related to the validity of the Ordinance.

On the preemption question, we must determine whether the Labor Code provisions regulating gratuities and the Ordinance are in conflict because the Ordinance either contradicts state law or enters a field the Legislature intended to cover under the Labor Code.

---

[3] On demurrer, we accept as true the material facts alleged in the complaint. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569]; *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 914 [91 Cal.Rptr.3d 816].)

[4] The joinder extended to all respondents with the exception of the defendants in *Waner v. Radisson Hotel LAX* (Super. Ct. L.A. County, 2008, No. BC377065). In *Waner*, the trial court sua sponte issued an order dismissing the complaint with prejudice.

[5] Unless otherwise stated, all further statutory references are to the Labor Code.

Since we conclude the Ordinance is not preempted, we also must determine whether the Ordinance passes constitutional muster. On that issue, we perceive no constitutional infirmity.

## I. *The Labor Code Does Not Preempt the Ordinance*

Whether the Ordinance is preempted is a question of law. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 129 [38 Cal.Rptr.3d 575].) Our preemption analysis requires us to interpret sections 350 to 356 of the Labor Code, which also is a question of law for our de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391–392 [20 Cal.Rptr.2d 164].)

### A. *Preemption Principles*

The hotels have the burden of demonstrating that the Labor Code provisions governing gratuities preempt the Ordinance. (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].) Courts are particularly "reluctant to infer legislative intent to preempt . . . when there is a significant local interest to be served that may differ from one locality to another. [Citations.]" (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 707 [209 Cal.Rptr. 682, 693 P.2d 261].) If there is a significant local interest, the presumption favors the validity of the local ordinance against an attack of state preemption. Thus, when the City regulates in an area over which it traditionally exercises control, we will presume, absent a clear indication of preemptive intent from the Legislature, that the Ordinance is not preempted by state law. (*IT Corp. v. Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 93–94 [2 Cal.Rptr.2d 513, 820 P.2d 1023].)

The traditional areas in which a city exercises control are set forth in the California Constitution: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) Local legislation that conflicts with general law is preempted and void. (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067 [63 Cal.Rptr.3d 67, 162 P.3d 583].) " ' "A conflict exists if the local legislation ' "*duplicates, contradicts,* or *enters an area fully occupied* by general law, either expressly or by legislative implication." ' " [Citations.]' " (*Id.* at p. 1067, citing *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]; see also *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251 [23 Cal.Rptr.3d 453, 104 P.3d 813].) We are concerned with whether the Ordinance contradicts or enters a field fully occupied by the Labor Code.

■ "[L]ocal legislation is 'contradictory' to general law when it is inimical thereto. [Citation.]" (*Sherwin-Williams Co. v. City of Los Angeles, supra*, 4 Cal.4th at p. 898.) When a local ordinance "does not prohibit what the statute commands or command what [the statute] prohibits," the ordinance is not "inimical to" state law. (*Id.* at p. 902.) Local legislation that is inimical to state law is preempted.

Local legislation enters an area fully occupied by general law when "the Legislature has expressly manifested its intent to fully occupy the area or when it has impliedly done so in light of recognized indicia of intent." (*Big Creek Lumber Co. v. County of Santa Cruz, supra*, 38 Cal.4th at p. 1150, citing *Great Western Shows, Inc. v. County of Los Angeles* (2002) 27 Cal.4th 853, 860–861 [118 Cal.Rptr.2d 746, 44 P.3d 120].) We are reluctant to invoke the doctrine of implied preemption. "Since preemption depends upon *legislative intent*, such a situation necessarily begs the question of why, if preemption was legislatively *intended*, the Legislature did not simply say so, as the Legislature has done many times in many circumstances." (*California Rifle & Pistol Assn. v. City of West Hollywood* (1998) 66 Cal.App.4th 1302, 1317 [78 Cal.Rptr.2d 591].) " 'In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme.' " (*San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 793 [75 Cal.Rptr.2d 534], citing *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150].) Indeed, preemption will not be implied where local legislation serves local purposes, and the general state law appears to be in conflict but actually serves different, statewide purposes. (*San Diego Gas & Electric Co. v. City of Carlsbad, supra*, at p. 793.) There is a presumption against preemption: " 'it is not to be presumed that the [L]egislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' [Citations.]" (*Big Creek Lumber Co. v. County of Santa Cruz, supra*, at pp. 1149–1150, citing *County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526].)

The hotels challenge the Ordinance as expressly contradicting the Labor Code and impliedly entering a field fully occupied by general state law. To resolve these preemption issues, we consider the statutory scheme of the Labor Code provisions governing gratuities, and the Ordinance, each on its own terms. (*Sherwin-Williams Co. v. City of Los Angeles, supra*, 4 Cal.4th at p. 897.) Finally, we "measure the latter against the former" to determine whether a conflict exists. (*Ibid.*) As shall be discussed, we do not find a conflict.

B. *The Gratuity Provisions in Sections 350 to 356*

The Labor Code sections are a comprehensive statutory scheme regulating gratuities. Our focus is on two specific statutory provisions, addressing the disposition of a gratuity, and defining the term "gratuity." (§§ 350, subd. (e), 351.) Section 351, addressing the disposition of gratuities, states in pertinent part: "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for. . . ." (§ 351.)

A "gratuity," as defined in section 350, subdivision (e), is "any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron. . . ." (§ 350, subd. (e).)

These statutes ensure that gratuities are not used by an employer to satisfy wage obligations. (*Etheridge v. Reins Internat. California, Inc., supra,* 172 Cal.App.4th at pp. 914–915 (maj. opn. of Croskey, J.); *id.* at p. 930 (conc. & dis. opn. of Klein, P. J.); *Searle v. Wyndham Internat., Inc.* (2002) 102 Cal.App.4th 1327, 1332 [126 Cal.Rptr.2d 231].)

C. *The City Ordinance*

The operative provisions of the Ordinance are codified in sections 184.00 through 184.06 of the Los Angeles Municipal Code. (L.A. Ord. No. 178084, adding art. 4, ch. XVIII, § 184.00 et seq. to LAMC.) Section 184.02 states in pertinent part: "Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected." (LAMC, § 184.02, subd. A.) Service charges may not be paid to "supervisory or managerial employees," and must be paid to "Hotel Worker(s) equitably and according to the services that are or appear to be related to the description of the amounts given by the hotel to the customers."[6] (LAMC,

---

[6] Los Angeles Municipal Code section 184.02 provides in pertinent part: "A. Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected. No part of these amounts may be paid to supervisory or managerial employees. The amounts shall be paid to Hotel Worker(s) equitably and according to the services that are or appear to be related to the description of the amounts given by the

§ 184.02, subd. A.) Service charges collected for banquets or catered meetings "shall be paid equally to the Hotel Workers who actually work the banquet or catered meeting"; service charges collected for room service "shall be paid to the Hotel Workers who actually deliver food and beverage associated with the charge"; and service charges collected for porterage services "shall be paid to the Hotel Workers who actually carry the baggage associated with the charge." (LAMC, § 184.02, subd. A.1–3.) Gratuities and tips left by customers for a hotel worker are excluded.[7] (LAMC, § 184.02, subd. B.)

■ A "service charge" is defined in the Ordinance as "all separately-designated amounts collected by a Hotel Employer from customers that are for service by Hotel Workers, or are described in such a way that customers might reasonably believe that the amounts are for those services, including but not limited to those charges designated on receipts under the term 'service charge,' 'delivery charge,' or 'porterage charge.' " (LAMC, § 184.01, subd. F.) The Ordinance also defines "hotel worker," "hotel employer," and "hotel," which are further explained in our constitutional analysis, *post*, at pages 388–389. (LAMC, § 184.01, subds. B–D.)

As stated in the Ordinance, its purpose is to "improve the welfare of service workers at the LAX-area hotels by ensuring that they receive decent compensation for the work they perform." (LAMC, § 184.00.) The Los Angeles City Council recognized that hotels adjacent to LAX reap significant economic benefits, including the highest occupancy rate of all Los Angeles hotels because of the proximity to the airport.[8] (LAMC, § 184.00.) These LAX-area hotels, however, fail to pay their workers a living wage, and because of the low hourly wages, these workers rely on gratuities. (LAMC, § 184.00.) Many workers have seen their income decline, and have reported a reduction in the gratuities they receive from customers, because LAX-area hotels have instituted a practice of adding a mandatory service charge of

hotel to the customers. The amounts shall be paid to the Hotel Workers in the next payroll following collection of an amount from the customer. Without limitation of the foregoing: [¶] 1. Amounts collected for banquets or catered meetings shall be paid equally to the Hotel Workers who actually work the banquet or catered meeting; and [¶] 2. Amounts collected for room service shall be paid to the Hotel Workers who actually deliver food and beverage associated with the charge. [¶] 3. Amounts collected for porterage service shall be paid to the Hotel Workers who actually carry the baggage associated with the charge." (LAMC, § 184.02, subd. A.1–3.)

[7] Los Angeles Municipal Code section 184.02, subdivision B provides: "This section does not apply to any tip, gratuity, money, or part of any tip, gratuity, or money that has been paid or given to or left for a Hotel Worker by customers over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the customer."

[8] We granted in part and denied in part appellants' request for judicial notice, and their second request for judicial notice of documents pertaining to the "official acts of the City of Los Angeles." (See Evid. Code, § 452, subd. (c).)

"15% to 20% of the bill for banquets and other large group events." (LAMC, § 184.00.) Hotel patrons assume the service charges are paid to the workers performing the services, and therefore the patrons reduce or eliminate gratuities. (LAMC, § 184.00.) While some hotels pay a portion of the service charges to workers, other hotels retain the service charges. (LAMC, § 184.00.)

Before the Ordinance was sent to the city council, several issues related to service charges were considered: (1) an ordinance that would have required hotels and restaurants to inform patrons that service charges are inclusive (or exclusive) of a gratuity; (2) the legality of adding a service charge or gratuity to a bill; and (3) the legality of not paying the service charge to employees, which is reasonably expected by customers paying the charge. (L.A. City Council, Trade, Commerce, and Tourism Com., Rep. on arts. 2, 3 & 4 to ch. XVIII of the LAMC.) The Ordinance addresses the third issue. (Com. Rep., at p. 2.)

D. *The Labor Code Regulating Gratuities Does Not Conflict with the Ordinance*

██ The Labor Code mandates that all gratuities are employees' property. (§§ 350–356.) A "gratuity" is "any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business *over and above the actual amount due the business for services rendered* or for goods, food, drink, or articles sold or served to the patron. . . ." (§ 350, subd. (e), italics added.) A gratuity is not a service charge. A service charge is a separately designated amount collected by a hotel from patrons that is part of the amount due the hotel for services rendered, rather than something "over and above the actual amount due." (See LAMC, § 184.01, subd. F.) Thus, a service charge by definition is not a gratuity. The Legislature has made clear that amounts due for services (which include service charges) are not gratuities. This interpretation is confirmed by a recent amendment to the definition of gratuity carving out an exception for dancing services.[9] (§ 350, subd. (e).)

The hotels contend the Ordinance transforms a service charge into a gratuity because it is paid to the workers performing the services. *Searle v. Wyndham Internat., Inc., supra*, 102 Cal.App.4th 1327, 1334–1335 has rejected that argument. The hotels contend the Ordinance's treatment of service charges conflicts with the Labor Code because the statutory definition of gratuity excludes employers' property (service charges). (§ 350, subd. (e).) We reject the hotels' argument.

---

[9] Section 350, subdivision (e), includes a specific reference to dancers. "Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No. 5 or 10 shall be deemed a gratuity."

■ The definition of gratuity in section 350, subdivision (e) does not define employers' property rights; it establishes the meaning of "gratuity" as that term appears elsewhere in the statute. (See *Cory v. Board of Administration* (1997) 57 Cal.App.4th 1411, 1423–1424 [67 Cal.Rptr.2d 763].) Section 351 prohibits employers from collecting, taking, or receiving any gratuity or part thereof and declares: "Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for." (§ 351.) When read in this statutory context, a "gratuity" as that term is defined in the statute does not refer to employers' property rights. (See *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 [67 Cal.Rptr.3d 468, 169 P.3d 889] [when construing a statute, courts view the statute's words in context].) We do not read section 351 or any other provision in the Labor Code governing gratuities to address employers' property rights.

Our review of extrinsic materials also does not support the hotels' interpretation. (See *Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 [106 Cal.Rptr.2d 548, 22 P.3d 324].) The legislative history does not suggest the Labor Code sections governing gratuities set property lines between an employer and employee; the line always has been drawn to define an employees' right to gratuities. (*Etheridge v. Reins Internat. California, Inc., supra*, 172 Cal.App.4th at pp. 916–918 (maj. opn. of Croskey, J.); *id.* at p. 930 (conc. & dis. opn. of Klein, P. J.); see also *Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1270–1275 [252 Cal.Rptr. 278, 762 P.2d 442]; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 729–730 [166 Cal.Rptr. 331, 613 P.2d 579].) The most recent amendment to section 351 removed an exemption to ensure that in all circumstances employees are entitled to gratuities.[10] (See Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as introduced Feb. 24, 2000, § 16, p. 24; *id.*, Legis. Counsel's Dig., p. 5.)[11] While the Legislature also has amended the definition of gratuity (§ 350, subd. (e)), we do not view this amendment as suggesting the Legislature recognizes that

---

[10] The 2000 amendment deleted this language from section 351: "This section shall not apply to any employment in which no charge is made to a patron for services rendered to the patron by an employee on behalf of his employer if both of the following conditions are met: (a) the employee is receiving a wage or salary not less than the higher of the state or federal minimum wage, regardless of whether such employee is subject to either such minimum wage law, and (b) the employee's wage or salary is guaranteed and paid in full irrespective of the amount of tips received by the employee." (Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as introduced Feb. 24, 2000, § 16, p. 24.)

[11] We granted the hotels' request for judicial notice of Assembly Bill No. 2509 (1999–2000 Reg. Sess.). The Legislative Counsel's Digest states: "Existing law prohibits employers from receiving or deducting gratuities intended for employees from wages otherwise payable. Violation is a misdemeanor. Under existing law, this prohibition is not applicable to an employee that has a guaranteed wage or salary that is at least the higher of the federal or state minimum wage. [¶] This bill would delete the above exemption . . . ." (Legis. Counsel's Dig., Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as introduced Feb. 24, 2000, p. 5.)

service charges are employers' property. There is nothing in the extrinsic materials to support this assertion. The Labor Code provisions governing gratuities do not address the ownership of service charges.

The Ordinance does not contradict the Labor Code. The Labor Code and the Ordinance address different subjects and attempt to prevent different harms. (§ 356; LAMC, § 184.00.) The Labor Code attempts to prevent fraud on the public in connection with the practice of tipping to ensure employees receive the tips left for them by the patron. (§ 356.) The Ordinance addresses certain hotels' business practices of pricing services based upon two components—a base price and a surcharge, designated as a "service charge." The service charge is not negotiable and is part of the amount the patron must pay for the services. The Ordinance does not prevent hotels from charging patrons for services, but it recognizes that the 15 percent to 20 percent service charge misleads the public into assuming that the service charge is being distributed to the worker performing the services. The Ordinance mandates that the service charge must be paid to the worker. Thus, the Ordinance does not prohibit what the Labor Code commands or command what it prohibits.

> E. *The Labor Code Does Not Impliedly Occupy the Field of Service Charges*

We find implied preemption[12] only when the circumstances indicate a legislative intent to preempt based upon "indicia of intent." (*O'Connell v. City of Stockton, supra,* 41 Cal.4th at p. 1068; *Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 898.) We look for the following indicia of intent: " ' "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality.' [Citation.]" (*O'Connell, supra,* at p. 1068, quoting *Sherwin-Williams, supra,* at p. 898.)

As previously stated, we look at the whole purpose and legislative scheme to determine legislative intent to impliedly occupy an area of law. (*O'Connell v. City of Stockton, supra,* 41 Cal.4th at p. 1068.) Absent a clear legislative intent, we will presume that a local regulation within an area over which the local government has traditionally exercised control, is not preempted. (*Id.* at p. 1069.) We find none of the indicia of intent to overcome this presumption.

---

[12] The hotels concede there is no express legislative intent to fully occupy the field in sections 350 through 356.

### 1. *No Complete Coverage of the Disposition of Service Charges*

The hotels contend the Legislature has completely covered the area of gratuities and service charges in sections 350 through 356 of the Labor Code. We disagree.

The Labor Code and the Ordinance address different subjects. (§§ 351, 356; LAMC, § 184.00.) The hotels' argument incorrectly assumes the definition of gratuity establishes an employers' absolute ownership of service charges. As we have previously stated, the definition of gratuity, when read in context, does not address employers' property rights. Neither the statute nor the legislative history of the Labor Code provisions regulating gratuities indicate the Legislature has considered the ownership of services charges, or has expressed an intent to prohibit local regulation of service charges.

The Legislature may have devoted a whole separate article to gratuities, as the hotels point out, but sections 350 to 356 do not even completely cover the subject of gratuities. As the tip-pooling cases illustrate, the Labor Code does not even address all employer conduct in connection with gratuities. (See *Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062, 1067 [268 Cal.Rptr. 647] ["While the language of the statute expressly prohibits various employer practices, there is no mention therein of employer-mandated tip pooling, or of any kind of tip pooling among employees."]; see also *Etheridge v. Reins Internat. California, Inc., supra,* 172 Cal.App.4th at pp. 918–920 (maj. opn. of Croskey, J.).)

As noted, the legislative history the hotels rely on refers to employer-prohibited practices of using gratuities to meet wage obligations. (*Etheridge v. Reins Internat. California, Inc., supra,* 172 Cal.App.4th at pp. 916–918 (maj. opn. of Croskey, J.); *id.* at p. 930 (conc. & dis. opn. of Klein, P. J.); see also § 356.) We do not agree with the hotels that the legislative history reveals the Legislature's "conscious decision to allow employers to keep service charges." We cannot locate any citation to the legislators' consideration of service charges. On the record before us, we conclude the Legislature has not turned its attention to this issue. It is therefore not a matter that has become a state concern.

### 2. *No Partial Coverage/Paramount State Concern*

We reject the hotels' contention that the Legislature has even partially covered the service charge issue in such terms as to indicate a state concern. (*Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 905.) The Labor Code does not address service charges.

The paramount state concern in the Labor Code is in regulating gratuities and preventing fraud on the public in connection with the practice of tipping. (§§ 351, 356.) The Legislature, however, has not expressed a paramount concern to ensure that employers have absolute ownership of business revenue designated as a "service charge." Thus, there is no indication the Legislature considered the service charge issue a paramount state concern.

### 3. *No Partial Coverage/Adverse Effect on the State*

The hotels present no argument on the third indicia of intent, that is, whether the Ordinance has an adverse effect on the state. The Ordinance is a purely local concern and is aimed at ensuring decent compensation for hotel service workers in the Corridor. (See *Searle v. Wyndham Internat., Inc., supra*, 102 Cal.App.4th at p. 1334 [allocation of service charges is of no direct concern to hotel guests].) The City passed the Ordinance based upon findings related to hotels' service charge practices, and hotels' failure to pay decent compensation to service workers in Corridor hotels.

■ The hotels have not overcome the presumption against preemption. (*Big Creek Lumber Co. v. County of Santa Cruz, supra*, 38 Cal.4th at pp. 1149–1150.) The Labor Code regulating gratuities does not preempt the Ordinance.

### II. *The Ordinance Is Not Unconstitutional*

■ The constitutionality of the Ordinance also is a question of law for our independent review. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799 [53 Cal.Rptr.3d 216].) "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) " ' "If feasible within bounds set by their words and purpose, statutes [ordinances] should be construed to preserve their constitutionality." ' " (*Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1126–1127 [108 Cal.Rptr.2d 102], fn. omitted.)

We approach our constitutional analysis with the presumption that the City did not intend to violate either the state or federal Constitution, but to enact a valid ordinance within the scope of its constitutional powers. " 'If a statute [ordinance] is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the con-

struction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] . . .' " (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 509 [53 Cal.Rptr.2d 789, 917 P.2d 628], citing *Miller v. Municipal Court* (1943) 22 Cal.2d 818, 828 [142 P.2d 297].) The constitutional challenges presented here fail because there is a reasonable construction based upon the language in the Ordinance.

### A. *The Classifications in the Ordinance Are Rationally Based and Do Not Violate the Equal Protection Clause*

■ The equal protection clauses of the federal and state Constitutions guarantee to persons equal protection of the laws. (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7; *Britt v. City of Pomona* (1990) 223 Cal.App.3d 265, 274 [272 Cal.Rptr. 724].) "A corporation is considered a 'person' entitled to the constitutional guarantee of equal protection. [Citation.]" (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 434 [110 Cal.Rptr.3d 498] (*Walgreen*).) Equal protection analysis under the federal and state Constitutions is substantially similar. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571 & fn. 9 [117 Cal.Rptr.2d 168, 41 P.3d 3]; *RUI One Corp. v. City of Berkeley* (9th Cir. 2004) 371 F.3d 1137, 1154.)

The hotels contend the Ordinance violates the guarantees of equal protection because it (1) singles out hotels within the Corridor and does not apply to other LAX-area hotels; (2) does not cover hotels with less than 50 rooms; and (3) exempts unionized hotels within the Corridor.[13]

As a threshold matter, a meritorious equal protection claim requires a showing that the City has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654]; *Walgreen, supra*, 185 Cal.App.4th at p. 434.) The hotels' equal protection challenge is predicated on the assumption that all LAX-area hotels are similarly situated.

---

[13] As defined in the Ordinance, " '[h]otel' means a residential building located within the area designated by ordinance as the Gateway to LA (Century Corridor) Property Business Improvement District (Century Corridor PBID) that is designated or used for lodging and other related services for the public, and containing 50 or more guest rooms, or suites of rooms. 'Hotel' also includes any contracted, leased, or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building. If the Century Corridor PBID ceases to exist, the boundaries at the time of dissolution shall remain in effect for purposes of this article." (LAMC, § 184.01, subd. B.)

The Ordinance is subject to rational basis review. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200–1201 [39 Cal.Rptr.3d 821, 129 P.3d 29]; *Warden v. State Bar* (1999) 21 Cal.4th 628, 641 [88 Cal.Rptr.2d 283, 982 P.2d 154].) We agree with the hotels that the rational basis review is not a meaningless standard. Our review requires us to determine "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.]" (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096]; see *People v. Hofsheier, supra*, at pp. 1200–1201; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 858 [99 Cal.Rptr.3d 503].) In making this determination, we need not determine the actual motive of the City in passing the Ordinance or engage in factfinding with regard to the rationality of conceivable motives. (*FCC v. Beach Communications, Inc., supra*, at p. 315.) We examine whether the rationale is plausible and the factual basis is reasonably conceivable, which requires consideration of the relation between the classification and the legislative object to be attained. (*People v. Hofsheier, supra*, at p. 1201, citing *Warden v. State Bar, supra*, at pp. 644–645.) *Walgreen, supra*, 185 Cal.App.4th at pages 434–436, which the hotels rely on to make their equal protection challenge, applied the same standard.

The hotels have the burden to negate every conceivable basis that might support the legislative classification. (*FCC v. Beach Communications, Inc., supra*, 508 U.S. at p. 315.) Proving the absence of a rational basis is not impossible but can be an exceedingly difficult task. The hotels have not met this burden.

### 1. *Hotel Size Limitations and Geographic Limits Are Rational*

The Ordinance drew the line at hotels with 50 or more guestrooms located in the business area designated as the Corridor. (LAMC, § 184.01, subd. B.) These distinctions are rationally related to a legislative purpose.

The hotels contend the line should have been drawn at all LAX-area hotels, especially since the purpose of the Ordinance is "to improve the welfare of service workers at the LAX-area hotels," not just at Corridor hotels. (LAMC, § 184.00.) We disagree.

The City's incremental approach to focus on the Corridor, a designated business district (LAMC, § 184.01, subd. B), does not violate equal protection. The incremental approach to treat businesses receiving municipal investments differently has been upheld as rationally based. In *RUI One Corp. v. City of Berkeley, supra*, 371 F.3d at page 1154, the Ninth Circuit rejected an equal protection challenge to a living wage ordinance that targeted only employers of a certain size operating on public trust land within Berkeley's

marina. Among the Berkeley City Council's justifications in drawing the line at the marina was the economic investment in the area, which resulted in a financial benefit to marina businesses, "a reasonable portion of which should be used to provide employees with appropriate wages and benefits . . . ." (*Id.* at p. 1145.) Thus, it was rational to treat marina businesses differently from their counterparts outside the marina. (*Id.* at pp. 1155–1156.)

Relying on *RUI One Corp. v. City of Berkeley, supra*, 371 F.3d 1137, the district court in *Fortuna Enterprises, L.P. v. City of Los Angeles* (C.D.Cal. 2008) 673 F.Supp.2d 1000, rejected an equal protection challenge to the Los Angeles city ordinance that designated the Corridor as a business district, which required hotels with 50 or more employees to pay their employees a living wage. (*Id.* at pp. 1001–1002, 1012–1014.) According to the *Fortuna* court, the Los Angeles City Council "acted rationally when it concluded that in exchange for the 'significant and unique business benefits' that the hotels enjoy from their close proximity to the airport, and the significant capital contributions that the City plans to make . . . the hotels should be required to pay a living wage." (*Id.* at p. 1014.)

Like *RUI One Corp.* and *Fortuna*, the hotels have failed to meet their burden to establish an equal protection violation. The Corridor already had been established as a designated business zone, which the City has designated and targeted for economic investment, and the City rationally could conclude this designation benefits Corridor hotels, obligating hotels to pay service workers a decent compensation. The hotels have failed to establish that this line drawing is not rationally related to legislative goals.

The size distinction in the Ordinance also is rationally based. The legislative purpose refers to the "ability" to support the local workforce by engaging in fair employment practices. (LAMC, § 184.00.) While the reference to "ability" is not further explained, the "ability to pay" follows from the legislative findings of high occupancy rates and the economic benefits hotels reap from the proximity to the airport. (*Ibid.*) Corridor hotels have a larger revenue stream from high occupancy rates, provide services in which a service charge is collected, and are in a better economic position to absorb the impact of the Ordinance. (LAMC, § 184.00.) A similar size classification was determined to be rationally based in *RUI One Corp. v. City of Berkeley, supra*, 371 F.3d 1137, 1154–1155. Our inquiry ends when there is a reasonably conceivable state of facts that provides a rational basis for the challenged classification. (*FCC v. Beach Communications, Inc., supra*, 508 U.S. at p. 313.)

The hotels ask us to follow *Walgreen, supra*, 185 Cal.App.4th 424, and to find no plausible reason for the geographic and size classifications, as the

City's rationale for these classifications is as arbitrary as the rationales presented to justify the San Francisco ordinance. We disagree with the hotels' conclusion and find the City's rationale fully supported.

In *Walgreen*, the San Francisco ordinance banned the sale of tobacco products in pharmacies, but exempted from the ban "general grocery stores" and "big box stores," that qualified as a "pharmacy." (*Walgreen, supra*, 185 Cal.App.4th at p. 429.) The San Francisco ordinance was based on the following principal finding: " 'Through the sale of tobacco products, pharmacies convey tacit approval of the purchase and use of tobacco products. This approval sends a mixed message to consumers who generally patronize pharmacies for health care services . . . .' " (*Ibid.*) Given the stated purpose, the *Walgreen* court could not find a plausible reason for the classification. "Here, there is no reasonably conceivable factual basis for finding that the purported implied message approving tobacco use is 'stronger' at a Walgreens than it is at a supermarket containing a licensed pharmacy." (*Id.* at p. 439.)

In their supplemental brief following oral argument, the hotels attempted to draw a parallel with *Walgreen* by solely focusing on the City's legislative purpose to avoid customer confusion. With that goal in mind, the hotels contend there is no plausible reason for the instant classifications. But the purpose of the Ordinance is much broader than preventing customer confusion. While the Ordinance refers to the reduction of gratuities based upon customer confusion, it also refers to low wages, a decline in workers' wages following hotels' service charge policies of imposing a 15 percent to 20 percent service charge, and high occupancy rates at LAX-area hotels. (LAMC, § 184.00.) Specifically, the Ordinance declares: "By way of this ordinance, the City seeks to improve the welfare of service workers at the LAX-area hotels by ensuring that they receive decent compensation for the work they perform." (*Ibid.*) Thus, this is much more than a consumer-confusion ordinance. Based upon this stated purpose, the City has offered plausible reasons for the geographic and size distinctions in the Ordinance which sets this case apart from *Walgreen*.

### 2. *Union Waiver Provision Is Rational*

The hotels contend there is no rational basis to exempt workers covered under a collective bargaining agreement. (LAMC, § 184.05.) But, the distinction between hotels with collective bargaining agreements and those without has been found to be a rational one. Workers covered by collective bargaining agreements may have greater bargaining power, and therefore, have a better ability to negotiate compensation than those workers that are not represented. (See *Viceroy Gold Corp. v. Aubry* (9th Cir. 1996) 75 F.3d 482, 490–491 [upholding provision containing union/nonunion distinction under rational

basis test based upon greater power of workers covered by collective bargaining agreement to ensure safe working conditions].) The purpose of the Ordinance is to improve the welfare of service workers by ensuring they receive decent compensation. The union exemption is rationally related to that legislative goal.

B. *The Ordinance Does Not Violate Due Process and Is Not Void for Vagueness*

■ Contrary to the hotels' contention, the provisions in the Ordinance relating to their responsibility to pay service charges, and the definitions of a "hotel employer" and "hotel worker" do not violate due process. ■ Under the due process clauses of the Fourteenth Amendment of the federal Constitution and article I, section 7 of the California Constitution, "due process of law is violated by 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations.]" (*Britt v. City of Pomona, supra*, 223 Cal.App.3d at p. 278; see also *Fisher v. City of Berkeley, supra*, 37 Cal.3d at p. 702.)

Our due process analysis is guided by two principles. A statute will pass constitutional muster, " 'if it (1) gives fair notice of the practice to be avoided, and (2) provides reasonably adequate standards to guide enforcement. [Citations.]' [Citation.]" (*Britt v. City of Pomona, supra*, 223 Cal.App.3d at p. 278.) In applying these two principles, we respect " 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1107.) Moreover, because the Ordinance regulates business behavior, constitutional requirements are more relaxed than they are for statutes that are penal in nature.[14] (*Teichert Construction v. California Occupational Safety & Health Appeals Bd.* (2006) 140 Cal.App.4th 883, 890 [44 Cal.Rptr.3d 833].)

---

[14] Enforcement measures include a private right of action for aggrieved employees, restitution, penalties for a willful violation, and attorney fees if the hotel worker is the prevailing party. (LAMC, § 184.04, subds. A.1–3, B.) The Ordinance specifically states that "no criminal penalties shall attach for violation of this article." (LAMC, § 184.04, subd. C.)

1. *Hotels' Responsibility to Pay Service Charges to Hotel Workers Is Clear*

The hotels contend the Ordinance is vague as to their obligation to pay service charges to hotel workers. The Ordinance directs "[t]he amounts shall be paid to Hotel Worker(s) equitably and according to the services that are or appear to be related to the description of the amounts given by the hotel to the customers," and specifically directs payment to the workers who actually work the banquet, actually deliver the food for room service, and actually carry the baggage. (LAMC, § 184.02, subd. A.1–3.)

The hotels attack the Ordinance as vague because (1) it is unclear who "actually" performs the services; (2) the "equitable allocation" of service charges to workers is uncertain; and (3) the phrase "appear to be related to services" requires them to read their customers' minds. These concerns are primarily ones of interpretation. As our Supreme Court has explained, "the mere fact that a new statute [ordinance] requires interpretation does not make it unconstitutionally vague." (*People v. Hazelton* (1996) 14 Cal.4th 101, 109 [58 Cal.Rptr.2d 443, 926 P.2d 423], fn. omitted.) There is a reasonable construction of hotels' responsibilities, which is all that is required for this due process challenge.

The hotels contend that determining who "actually works" the banquet, for example, is vague because this might include servers and captains, along with cooks and those employees who provide behind-the-scenes banquet services. This is an interpretation question, not a constitutional challenge. The plain language of the Ordinance resolves any ambiguity.[15] Given the purpose of the Ordinance, and the definition of service worker, those who actually work the banquet are those employees that patrons (1) would reasonably believe performed the services, and (2) had previously received gratuities for these services. (LAMC, §§ 184.00, 184.01, subd. F.)

The equitable or fair allocation of service charges is clear; it is left to the discretion of each employer. (LAMC, § 184.02 A.1–3.)

The Ordinance also clearly states for constitutional purposes what service charges must be paid and to whom. The Ordinance states the amount paid to the worker depends upon "the services that are or appear to be related to the description of the amounts given by the hotel to the customers."[16] (LAMC,

---

[15] The plain language in the Ordinance also clearly states who is entitled to be paid the service charges for room service deliveries or for baggage services. (LAMC, § 184.02, subd. A.2–3.)

[16] The city used different language to describe a hotel employer's responsibility to pay service charges to services workers (LAMC, § 184.02, subd. A), and to define a "service

§ 184.02, subd. A.) If a bill separately describes "room service charge," it would "appear" the hotel service worker who delivered the food is entitled to the entire service charge. (LAMC, §§ 184.01, subd. F, 184.02.) This is set out specifically in the Ordinance. (LAMC, § 184.02, subd. A.2.) When the bill or receipt does not specifically refer to room service, banquets, or porterage services (LAMC, § 184.02, subd. A.1–3), the service charge is paid to the worker who appeared to perform the described services. This aids hotels in their equitable allocation of service charges, ensuring the employee who performs the services receives the payment.

### 2. *The Definitions of "Hotel Employer" and "Hotel Worker" Are Clear*

The hotels also contend the definitions of "hotel employer" and "hotel worker" are circular. They point to the definition of a "hotel employer," which includes "a Person who provides services at the Hotel,"[17] and the definition of a "hotel worker," which includes any individual who "performs a service for which the Hotel Employer imposes a Service Charge."[18] (LAMC, § 184.01, subds. C, D.) To make this argument, the hotels omit key portions of these definitions. When read in context, there is a reasonable construction of "hotel employer" and "hotel worker" that is not circular and not constitutionally infirm.

The definition of a hotel worker is a three-part definition that is conjunctive, not disjunctive. A hotel worker is any individual whose primary place of employment is a hotel, who is employed directly by the hotel or by a person who "has contracted with the Hotel Employer to provide services," *and* who performs services for which the hotel employer provides services. (LAMC, § 184.01, subd. D.) The second condition in the definition of a "hotel worker," is the one contemplated in the third alternative definition of a

charge" (LAMC, § 184.01, subd. F), but these provisions when read together do not result in a vague Ordinance. The definition of "service charges," includes situations in which there is no designation on a receipt or bill that a separately designated charge is a "service charge" and instead describes the charges as a "delivery charge," or "porterage charge." (LAMC, § 184.01, subd. F.) These types of charges, which a customer would reasonably associate with service are all "service charges," which trigger the hotels' responsibilities to pay the service charges to the worker who carried the baggage or delivered food to the patron. (LAMC, § 184.02, subd. A.)

[17] "Hotel Employer" is defined as: "a Person who owns, controls, and/or operates a Hotel, or a Person who owns, controls, and/or operates any contracted, leased, or sublet premises connected to or operated in conjunction with the Hotel's purpose, or a Person who provides services at the Hotel." (LAMC, § 184.01, subd. C.)

[18] " 'Hotel Worker' means any individual (1) whose primary place of employment is at a Hotel, (2) who is employed directly by the Hotel Employer or by a Person who has contracted with the Hotel Employer to provide services at the Hotel, and (3) who performs a service for which the Hotel Employer imposes a Service Charge. 'Hotel Worker' does not include a managerial, supervisory, or confidential employee." (LAMC, § 184.01, subd. D.)

hotel employer, that is, "a Person . . . who performs a service [for a hotel]." (LAMC, § 184.01, subd. D.) For example, an outside caterer provides services for a hotel (a hotel employer) and employs hotel workers to perform services by serving the food the caterer prepares for the catered meeting at the hotel. Moreover, a hotel employer "provides" services, such as room service, while a hotel worker "performs" the room service by delivering the food or drinks. The plain meaning of these terms differs. (See Webster's 3d New Internat. Dict. (1981) pp. 1678, 1827.) We are bound to give the Ordinance before us a commonsense construction in accordance with the plain and ordinary meaning of its words. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

The definitions of a "hotel employer" and "hotel worker" are not "hopelessly circular" like the transient tax ordinances at issue in *Britt v. City of Pomona, supra,* 223 Cal.App.3d at pages 278–279 and *City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino* (1997) 59 Cal.App.4th 237, 249–250 [69 Cal.Rptr.2d 97]. In *City of Pomona,* the definition of a transient provided no guidance because "a 'transient' is one who occupies a 'hotel,' while a 'hotel' is a structure which is occupied or intended to be occupied by 'transients.' " (*Britt v. City of Pomona, supra,* at p. 279.) In *City of San Bernardino,* the definition of "hotel" used a 30-day limit on occupancy, while the definition of "transient" used a 90-day limit on occupancy. (*City of San Bernardino, supra,* at p. 249.) The Ordinance contains neither of these defects and is not void for vagueness.

## C. *The Ordinance Is Not an Unconstitutional Taking*

The hotels also challenge the Ordinance as a regulatory taking under the Fifth Amendment to the United States Constitution and article I, section 19 of the California Constitution.[19] The takings clause forbids the taking of private property for public use without just compensation. "The purpose of forbidding uncompensated takings of private property for public use is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [Citation.]" (*Connolly v. Pension Benefit Guaranty Corp.* (1986) 475 U.S. 211, 227 [89 L.Ed.2d 166, 106 S.Ct. 1018].)

While this is not a "classic" takings challenge, under certain circumstances, an economic regulation may result in a taking. (*Kavanau v. Santa*

---

[19] The federal Constitution states: "[N]or shall private property be taken for public use, without just compensation." (U.S. Const., 5th Amend.) Our state Constitution provides that "[p]rivate property may be taken or damaged for public use only when just compensation . . . has first been paid to, or into [the] court for, the owner." (Cal. Const., art. I, § 19, subd. (a).)

*Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 773–774 [66 Cal.Rptr.2d 672, 941 P.2d 851].) Whether an economic regulation constitutes a taking depends upon several factors. As our Supreme Court in *Kavanau* explained: "When a regulation does not result in a physical invasion and does not deprive the property owner of all economic use of the property, a reviewing court must evaluate the regulation in light of the 'factors' the high court discussed in *Penn Central* [*Transp. Co. v. New York City* (1978) 438 U.S. 104 [57 L.Ed.2d 631, 98 S.Ct. 2646]] and subsequent cases. *Penn Central* emphasized three [significant] factors in particular: (1) '[t]he economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' [Citations.]" (*Kavanau, supra,* at p. 775.) While the *Kavanau* court distilled additional factors, the court cautioned that these factors should not be applied as a checklist but applied appropriately to the facts of each case. (*Id.* at pp. 775–776.)

Under the *Penn Central* factors, we fail to see how the Ordinance is a regulatory taking. No assets have been appropriated for government use. The Ordinance reallocates hotels' revenue derived from service charges to pay compensation. It is not retroactive; hotels will prospectively pay service charges as part of the obligation to compensate workers, and hotels will pay service charges only to those workers who perform services for which hotels impose a service charge. This does not amount to an unconstitutional taking under the *Penn Central* factors. (Cf. *Eastern Enterprises v. Apfel* (1998) 524 U.S. 498, 529–537 [141 L.Ed.2d 451, 118 S.Ct. 2131] (plur. opn. by O'Connor, J.) [retroactive economic regulation that disproportionately divests a company of $50 to $100 million many years after the company believed its liabilities had been settled amounts to a taking].)

 Our takings analysis depends, in part, on the recognition that the hotels' obligation under the Ordinance does not operate upon or alter an identified property interest. We caution, however, that the language of the Ordinance should not be read to operate upon or alter a charge for a service that is provided by the hotel, such as, for example, a charge for laundry and drycleaning services, babysitting services, spa and health-related services, and the like. Thus, for purposes of our takings analysis, the Ordinance is properly interpreted not to affect a hotel's disposition of charges collected by it as a legitimate price of the provision of its services. Rather, the Ordinance is designed to address the "service charges" above and beyond the hotel's recoverable costs in providing the services. A "service charge" under the Ordinance might better be described in common parlance as "a charge imposed in lieu of gratuities." Accordingly, our interpretation of the Ordinance does not constitute an unconstitutional taking.

## DISPOSITION

The judgments in *Chavez v. Renaissance Montura Hotel Los Angeles* (B210716); *Chavez v. Marriott LAX* (B210719); *Garcia v. Four Points Sheraton LAX* (B210720); *Lozano v. Hilton Los Angeles Airport* (B210726); and *Waner v. Radisson Hotel LAX* (B210730) are reversed with directions to overrule the demurrers. Appellants are entitled to costs on appeal.

Klein, P. J., and Croskey, J., concurred.