Filed 1/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AUDIO VISUAL SERVICES GROUP, INC., | B256266 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC522943) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| JUAN SOLARES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. William F. Highberger, Judge.
Petition granted.

Schiffer & Buus and Eric M. Schiffer for Petitioner.

No appearance for Respondent.

Hadsell Stormer Richardson & Renick, Randy Renick, Cornelia Dai; Davis,
Cowell & Bowe, Elizabeth Ann Lawrence and Paul L. More for Real Party in Interest.

_____

Plaintiff Juan Solares seeks to represent a class of employees who are or were employed by Audio Visual Services Group, Inc., doing business as PSAV Presentation Services (PSAV), which provides audio-visual services to hotels within the Century Corridor Property Business Improvement District (Century Corridor PBID) adjacent to the Los Angeles International Airport (LAX).  They allege that PSAV collects from customers a separately designated "service charge," "delivery charge," facility charge," "gratuity," "administrative fee," or other such charge that "customers might reasonably believe . . . were for the class member/employees' services."  PSAV allegedly fails to pay the separately-designated charges it collects to its employees in violation of the Hotel Service Charge Reform Ordinance (Ordinance) in the Los Angeles Municipal Code. (L.A. Ord. No. 178084, adding art. 4, ch. XVIII, § 184.00 et seq. to L.A. Mun. Code (LAMC).)  The failure of PSAV to pay these service charges to its employees is the basis for Solares's unfair competition law claim (UCL).  (Bus. & Prof. Code, § 17200 et seq.)

In *Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364 (*Garcia*), we upheld the Ordinance against a constitutional challenge by certain hotels in the Century Corridor PBID.  As part of our constitutional analysis, we considered a vagueness challenge by the hotels to the provision of the Ordinance setting forth the hotel employers' responsibilities to pay service charges to hotel workers.  (*Id*. at pp. 386-389.) *Garcia* arose out of a class action brought by hotel banquet captains and servers, one of the specific classes of hotel workers who are entitled to be paid the service charge collected for their services as set forth in section 184.02 of the Los Angeles Municipal Code.

Here, we are presented with the issue of whether audio-visual workers are within the class of hotel workers entitled to be paid service charges pursuant to the Ordinance. The Ordinance was intended to benefit hotel workers who earn low hourly wages and traditionally relied on gratuities.  These hotel workers saw a decrease in gratuities because hotel customers assumed the service charge would be paid to the service worker who actually performed the services.  Thus, the Ordinance applies only to those hotel workers who would have received a gratuity for their services but for the imposition of a

2

service charge that hotel customers believed was in lieu of a gratuity. Because the class action complaint does not allege that Solares and the class he seeks to represent are within the class of hotel workers who traditionally relied on gratuities, and no proposed amendment could cure this defect, the complaint fails to state a UCL claim based upon a violation of the Ordinance. Accordingly, we grant PSAV's petition for writ of mandate and direct the trial court to reverse its order, which overruled PSAV's demurrer to the UCL cause of action.

BACKGROUND

1. *The Ordinance*

In 2006, the City enacted the Ordinance to increase the compensation of service workers at LAX-area hotels. The Ordinance requires hotels within the Century Corridor PBID, with 50 or more guest rooms, and no collective bargaining agreement, to pass along the entire service charge to the hotel workers who actually performed the services for which the charges are collected. (LAMC, § 184.00 et seq.)

As stated in the Ordinance, its purpose is to "improve the welfare of service workers at the LAX-area hotels by ensuring that they receive decent compensation for the work they perform." (LAMC, § 184.00.) The Los Angeles City Council recognized that hotels adjacent to LAX reap significant economic benefits, including the highest occupancy rate of all Los Angeles hotels because of the proximity to the airport. (*Ibid.*) These LAX-area hotels, however, failed to pay their workers a living wage, and because of the low hourly wages paid, service workers relied on gratuities. (*Ibid.*) Many service workers saw their income decline, and reported a significant reduction in the gratuities they received from customers, because LAX-area hotels instituted a practice of adding a mandatory service charge of "15% to 20% [to] the bill for banquets and other large group events." (*Ibid.*) Hotel customers assumed these service charges were paid to the workers performing the services, and therefore they reduced or eliminated gratuities they would otherwise have paid to service workers. (*Ibid.*) While some hotels paid a portion of the service charges to workers who actually performed the services, other hotels retained the entire service charge. (*Ibid.*)

3

To address this problem, the city council enacted the Ordinance. (LAMC, § 184.00.) The hotel employers' responsibilities are set forth in section 184.02 of the Ordinance.

Section 184.02 of the Los Angeles Municipal Code states in pertinent part: "Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected." (LAMC, § 184.02, subd. A.)[1] Service charges may not be paid to "supervisory or managerial employees," and must be paid to "Hotel Worker(s) equitably and according to the services that are or appear to be related to the description of the amounts given by the hotel to the customers." (*Ibid.*) Service charges collected for banquets or catered meetings "shall be paid equally to the Hotel Workers who actually work the banquet or catered meeting"; service charges collected for room service "shall be paid to the Hotel Workers who actually deliver food and beverage associated with the charge"; and service charges collected for porterage services "shall be paid to the Hotel Workers who actually carry the baggage associated with the charge." (LAMC, § 184.02, subd. A.1-3.) This section does not apply to

---

[1] Los Angeles Municipal Code section 184.02 provides: "A. Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected. No part of these amounts may be paid to supervisory or managerial employees. The amounts shall be paid to Hotel Worker(s) equitably and according to the services that are or appear to be related to the description of the amounts given by the hotel to the customers. The amounts shall be paid to the Hotel Workers in the next payroll following collection of an amount from the customer. Without limitation of the foregoing: [¶] 1. Amounts collected for banquets or catered meetings shall be paid equally to the Hotel Workers who actually work the banquet or catered meeting; and [¶] 2. Amounts collected for room service shall be paid to the Hotel Workers who actually deliver food and beverage associated with the charge. [¶] 3. Amounts collected for porterage service shall be paid to the Hotel Workers who actually carry the baggage associated with the charge." (LAMC, § 184.02, subd. A.1-3.)

4

gratuities and tips left by customers for a hotel worker who actually performed the services.[2]  (LAMC, § 184.02, subd. B.)

## 2.  *Proceedings*

### a.  *Class Action Complaint*

Solares was employed by PSAV as an audio-visual technician from approximately June 1999 to October 2009 and was assigned to work at the Hilton Los Angeles Airport Hotel.  Solares provided services to hotel customers for which PSAV collected a separately-designated charge.

Solares filed a class action complaint alleging PSAV provides services at LAX-area hotels within the Century Corridor PBID.  PSAV is allegedly a hotel employer as defined under the Ordinance, collects a "service charge" on services it provides to hotel customers, and fails to pay the entire service charge to its employees who actually perform the services for which the service charges are collected.

The class action complaint alleges a violation of the Ordinance (first cause of action) and a UCL violation (second cause of action).

### b.  *Demurrer to the Class Action Complaint*

PSAV filed a demurrer to the class action complaint.  PSAV argued the Ordinance was intended to protect the wages of "traditionally tipped hotel workers" and, therefore, did not apply to its employees.  Moreover, any violation of the Ordinance was barred by the applicable statute of limitations.

Solares conceded the demurrer to the first cause of action, alleging a violation of the Ordinance, as the claim was barred by the applicable statute of limitations.  Solares opposed the demurrer to the UCL claim, principally arguing that the plain language of the Ordinance did not limit its reach only to those hotel workers who traditionally received

---

[2]  Los Angeles Municipal Code section 184.02, subdivision B, provides:  "This section does not apply to any tip, gratuity, money, or part of any tip, gratuity, or money that has been paid or given to or left for a Hotel Worker by customers over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the customer."

gratuities for their services.  Although not pled, Solares (through counsel) asserted the complaint could be amended to allege that audio-visual technicians receive a gratuity for each banquet event at a hotel.[3]

Both parties submitted requests for judicial notice of legislative materials associated with drafting and enacting the Ordinance.  The trial court took judicial notice of the legislative materials.

### c.  *Trial Court Overruled the Demurrer to the UCL Claim*

The trial court overruled the demurrer to the UCL claim, stating:  "The Court agrees with plaintiff that an employee of [PSAV] may be a 'hotel worker' within the meaning of the ordinance because plaintiff performed his work inside a hotel routinely and the hotel incorporated [PSAV's] bill (including the 'service charge' element, so stated) into its master bill for meeting functions held at the hotel.  For the same reason, [PSAV], may be a 'hotel employer' within the meaning of the ordinance.

"The Court also agrees with plaintiff that a 'service charge,' so described, comes within the reach of the ordinance as a 'separately-designated amount [] collected by the Hotel Employer from customers that are for services by Hotel Workers,' whether or not it is 'described in such a way that customers might reasonably believe that the amounts are for those services, including but not limited to those charges designated on receipts under the term "service charge." '  The ordinance is plain on its face . . . .  The Court does not agree with [PSAV's] approach to statutory interpretation.

"'There may well be no equitable merit to plaintiff's case if this class of workers has historically served in positions where tips are rare or non-existent, but the City Council, for reasons good and sufficient to itself, has decided that hotels and hotel subcontractors who choose to 'un-bundle' their bills with line items described as 'Service Charges' and the like do so at their peril if they are located within the Gateway to LA

---

[3]  The proposed amendment appears to have been based upon a magazine article entitled "Gratuities 101:  The Definitive Guide to Tipping for Meeting Professionals," which includes a "tipping guide" and lists the recommended tip for audio-visual technicians.

(Century Corridor) Property Business Improvement District, have more than 50 guest rooms, and do not have a collective bargaining agreement."

The trial court certified its ruling on this issue as presenting a controlling issue of law suitable for early appellate review under Code of Civil Procedure section 166.1.[4]

### d. *Writ Petition*

PSAV filed a petition for writ of mandate, asking this court to review the trial court's order. We issued an order to show cause.

## DISCUSSION

### 1. *Propriety of Writ Review*

"An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.] Appeal is presumed to be an adequate remedy and writ review is rarely granted unless a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.)

In the present case, writ review is proper for both reasons. The petition raises a significant issue regarding the definition of "hotel worker" in the Ordinance. Additionally, resolution of the issue in favor of PSAV would result in a final disposition of this action.

### 2. *Standard of Review*

We apply a de novo standard of review because this case was resolved on demurrer (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 996)[5] and

---

[4]  Code of Civil Procedure section 166.1 provides in pertinent part that "a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation." "The intent is evidently to encourage the appellate court to review the issue on the merits if the losing party files a petition for extraordinary relief." (*Lauermann v. Superior Court* (2005) 127 Cal.App.4th 1327, 1330, fn. 6.)

[5]  For purposes of our review, we treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see *McCall v. PacifiCare of Cal., Inc.* (2001)

because statutory construction presents a pure question of law (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529). We interpret the Ordinance using the same rules of interpretation applicable to statutes. (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 764.)

In interpreting the Ordinance, we look first to the words, giving the words their usual and ordinary meaning, while construing the words in light of the Ordinance as a whole and its purpose. (See *Pineda v. Williams-Sonoma Stores, Inc.*, *supra*, 51 Cal.4th at pp. 529-530.) " 'In other words, " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " ' [Citation.]" (*Id.* at p. 530.) "Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)

3. *The Class Action Complaint Does Not Allege a Violation of the Ordinance*

PSAV and Solares urge two diametrically opposed constructions of the Ordinance. On the one hand, PSAV contends the city council intended the Ordinance to apply only to those hotel workers who perform banquet services, room service, and porterage services, for which they customarily receive a gratuity, focusing on the plain language of the Ordinance, including its "Purpose" in section 184.00 of the Los Angeles Municipal Code, and relying on *Garcia*, *supra*, 188 Cal.App.4th 364. Solares, on the other hand, contends the Ordinance applies to all hotel workers who perform a service for which the hotel employer imposes a service charge, focusing solely on the plain language of the definitions in the Ordinance, ignoring the codified purpose in the Ordinance, and relying on *Garcia*.

As shall be explained, *Garcia* is not controlling. In construing the Ordinance, we consider the plain language as a whole and its purpose to ascertain the city council's

---

25 Cal.4th 412, 415.) We also consider matters that may be judicially noticed. (*Blank v. Kirwan*, *supra*, at p. 318.)

intent. The broad statutory definition of a "hotel worker," is further refined in section 184.02 of the Los Angeles Municipal Code addressing the hotel employers' responsibilities to pay service charges to hotel workers. When read as a whole, the Ordinance applies to a specific class of hotel workers who rely on gratuities as part of their wages. Therefore, the "hotel workers" covered by the Ordinance are those hotel workers who would have received a gratuity paid by customers over and above the actual amount due for services but for the imposition of a service charge that hotel customers believed was in lieu of a gratuity.

    a. *Garcia is Not Controlling*

While both parties cite this court's opinion in *Garcia*, *supra*, 188 Cal.App.4th 364 to support their construction of the Ordinance, *Garcia* did not address the discrete issue presented here.[6] *Garcia* determined the Ordinance is not constitutionally infirm. (*Id*. at pp. 381-390.) Although *Garcia* involved banquet captains and banquet servers, *Garcia* did not purport to define the entire class of hotel workers the city council intended to benefit when it enacted the Ordinance.

    b. *The Plain Language of the Ordinance*

The Ordinance defines a "hotel worker" as any individual whose primary place of employment is a hotel, who is employed directly by the hotel or by a person who "has contracted with the Hotel Employer[7] to provide services," and who "performs a service for which the Hotel Employer imposes a Service Charge." (LAMC, § 184.01, subd. D.)

---

[6]     Solares contends that in *Garcia*, *supra*, 188 Cal.App.4th 364, this court concluded the definition of "hotel worker" was clear and unambiguous. This argument is based upon a heading on page 388, stating "*The Definitions of 'Hotel Employer' and 'Hotel Worker' Are Clear*." The discussion that followed the heading addressed the argument that these statutory definitions were not circular or constitutionally infirm when read in the context of who provides services and who performs services. (*Id*. at pp. 388-389.)

[7]     The term "Hotel Employer," "means a Person who owns, controls, and/or operates a Hotel, or a Person who owns, controls, and/or operates any contracted, leased, or sublet premises connected to or operated in conjunction with the Hotel's purpose, or a Person who provides services at the Hotel." (LAMC, § 184.01, subd. C.)

A service charge is defined as "all separately-designated amounts collected by a Hotel Employer from customers that are for service by Hotel Workers."[8] (LAMC, § 184.01, subd. F.)

If we were to focus our analysis only on these definitions, as Solares urges, the broad statutory definition of a "hotel worker" would not limit the scope of the Ordinance to those hotel workers who traditionally receive gratuities for their services and would, as he suggests, apply to plumbers and the like who provide hotel services. In reviewing the text of an Ordinance, however, we must follow the fundamental rule of statutory construction that requires every part of the Ordinance to have some effect and not be treated as meaningless. (*Pineda v. Williams-Sonoma Stores, Inc.*, *supra*, 51 Cal.4th at p. 530.) Considering the Ordinance as a whole, we conclude the city council did not intend the term "hotel worker" to embody the broadest possible meaning.

Los Angeles Municipal Code section 184.01 defines in general terms a hotel worker, followed by section 184.02, which includes a nonexhaustive list of specific examples of service charges that must be paid to hotel workers who perform a service for which the hotel employer collects a service charge. These specific examples include three types of hotel workers, those who work banquets or catered meetings, deliver food and beverages, and carry baggage. (LAMC, § 184.02, subd. A.1-3.) The principle of *ejusdem generis* provides guidance in discerning the city council's intent. " '*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' [Citation.]" (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 342.) The canon presumes that if the city council intends a general word

---

[8] The term "Service Charge," "means all separately-designated amounts collected by a Hotel Employer from customers that are for service by Hotel Workers, or are described in such a way that customers might reasonably believe that the amounts are for those services, including but not limited to those charges designated on receipts under the term 'service charge,' 'delivery charge,' or 'porterage charge.' " (LAMC, § 184.01, subd. F.)

to be used in an unrestricted sense, then it also does not offer specific examples of a class of things because those descriptions would be surplusage. (*Ibid.*)

The specific examples of hotel workers listed in section 184.02 of the Los Angeles Municipal Code all provide services for which the payment of a gratuity constitutes part of their wages. Had the city council intended "hotel worker" to be used in its broadest sense, the listing of these examples in section 184.02 would have been unnecessary and surplusage. Thus, reading the Ordinance as a whole, the Ordinance applies only to those hotel workers who are similarly-situated to the hotel workers that are specifically enumerated in the nonexhaustive list in the Ordinance, that is, hotel workers for which the payment of a gratuity constitutes part of their wages, and who would have been paid a gratuity by hotel customers but for the imposition of the service charge collected by the hotel for their services.[9]

Section 184.02 of the Los Angeles Municipal Code contains additional language that indicates the city council intended to target a specific class of hotel workers who rely on gratuities as part of their wages. First, service charges cannot be paid to a hotel worker who is a supervisory or a managerial employee. (LAMC, § 184.02, subd. A.) Traditionally, supervisors and managers are not among employees who receive gratuities. (See Lab. Code, §§ 350, subd. (d), 351; *Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143-146.) Second, the express exclusion of "gratuities" in subdivision B of section 184.02 is a further indication the city council was concerned with a specific class of hotel workers dependent upon gratuities. As previously stated, every part of the Ordinance has some effect and cannot be treated as meaningless or surplusage.

We therefore conclude that the plain language of the Ordinance requires hotel employers to pay service charges to a class of hotel workers who traditionally would have been paid a gratuity for those services, but due to the imposition of the service charge,

---

[9] Accordingly, we also reject PSAV's construction that the list of hotel workers in section 184.02 of the Los Angeles Municipal Code is exhaustive.

11

hotel customers mistakenly believed the service charge was paid to the hotel worker in lieu of a gratuity. This construction of the statutory language is supported by the stated purpose of the Ordinance.

     c. *The Purpose of the Ordinance*

Solares contends that we should disregard the purpose of the Ordinance codified in section 184.00 of the Los Angeles Municipal Code, because it is merely a "preamble" and of no help in construing the Ordinance. We reject Solares's request.

" 'In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration. [Citations.] Although such statements . . . do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute. [Citations.]' [Citation.]" (*Carter v. California Dept. of Veteran Affairs* (2006) 38 Cal.4th 914, 925.)

Solares next urges that if this court considers the stated purpose of the Ordinance, the city council's intent in enacting the Ordinance was to ensure "decent compensation for service workers at LAX-area hotels," not just those hotel workers who rely on gratuities as part of their wages. To illustrate this point, Solares argues plumbers who subcontract with hotels and who provide services for which hotels collect a "plumbing service charge," are within the class of hotel workers covered by the Ordinance. But, as PSAV points out, Solares omits any allegation that plumbers were tipped employees who saw their gratuities diminish because of the imposition of a "plumbing service charge" in which hotel customers were confused as to whether the "plumbing service charge" on the bill was in lieu of a gratuity.

The stated purpose of the Ordinance leaves no doubt the city council had a specific intent in mind, that is, to ensure that LAX-area hotel workers who relied on gratuities earned a living wage. (LAMC, § 184.00.) The practice of adding service charges to customers' bills had the effect of decreasing hotel workers' gratuities as customers were confused over whether the service charge actually was paid to the hotel worker performing the services. (*Ibid.*) As a result, hotel workers saw a decrease in their

12

gratuities as customers either reduced or eliminated gratuities they would otherwise have paid because they assumed the service charge was paid to the worker. (*Ibid.*)

We read nothing in the stated purpose of the Ordinance to support Solares's argument that the city council intended to address all "service charges" that are separate line items on hotel bills.

d. *Legislative History of the Ordinance*

Although not necessary to our construction of the Ordinance, the legislative history offers additional support that the city council intended to target a specific class of hotel workers. According to the Chief Legislative Analyst's report to the city council, the impetus of the Ordinance was a special meeting before the Los Angeles City Council, Trade, Commerce, and Tourism Committee where workers employed by hotels in the Century Boulevard Corridor discussed the problems of low wages and the imposition of service charges for a group meal that were not necessarily paid to those workers who served the meal. (L.A. Chief Legis. Analyst, Rep. on City Options to Help LAX-Area Hotel Workers (Apr. 19, 2006) pp. 3-4.)

Before the Ordinance was sent to the Los Angeles City Council, several issues related to service charges were considered: (1) an ordinance that would have required hotels and restaurants to inform patrons that service charges are inclusive (or exclusive) of a gratuity paid to the restaurant or hotel service worker; (2) the legality of automatically adding a service charge or gratuity to a bill; and (3) the legality of not paying the service charge to employees performing the services, which is reasonably expected by hotel customers paying the charge. (L.A. City Council, Trade, Commerce, and Tourism Com. Rep. on arts. 2, 3 & 4 to ch. XVIII of the LAMC (Oct. 5, 2006) pp. 1-2.)

In analyzing the legality of legislation that would ensure hotel employers paid the service charge collected to hotel workers who actually performed the services, the Los Angeles City Attorney noted that testimony before the Los Angeles City Council Trade, Commerce, and Tourism Committee revealed, "patrons of the LAX-area hotels are often charged a 'service charge' of approximately twenty percent on their banquet fees.

13

That charge is commonly and understandably mistaken as a gratuity by the consumer, and thus no actual gratuity is left." (L.A. City Attorney Rep. on Draft Ordinances, adding arts. 2, 3 & 4 to ch. XVIII of the LAMC (Oct. 6, 2006) p. 11.)

While this excerpt of legislative history focused on a service charge imposed for banquet services, it confirms that the Ordinance was intended to address "service charges" on a hotel bill that hotel customers mistakenly concluded were gratuities and thus left no gratuity for the hotel workers who actually performed the service. The city council clearly intended to remedy this practice in enacting the Ordinance. The Ordinance requires hotel employers to pay service charges to hotel workers who would have received gratuities for performing these services, such as banquet servers, porters, and similarly situated hotel workers, and who rely on gratuities as part of their wages. Accordingly, Solares, and the class of audio-visual workers he seeks to represent, are not among the class of hotel workers the city council intended to protect when enacting the Ordinance.

e. *The UCL Claim Fails as a Matter of Law*

In light of our construction of the Ordinance that Solares, an audio-visual technician, is not among the class of hotel workers entitled to be paid service charges pursuant to the Ordinance, Solares cannot assert a UCL claim against PSAV. Business and Professions Code section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with [Business and Professions Code ] Section 17500) of Part 3 of Division 7 of the Business and Professions Code." The UCL claim is dependent upon a violation of the Ordinance. Thus, the class action complaint failed to state a cause of action.

Further, Solares is not entitled to leave to amend. Solares has the burden to show the class action complaint can be amended. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) It is an abuse of discretion to deny leave to amend only if an amendment is potentially effective. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542.)

14

Because Solares cannot allege he is among the class of hotel workers covered by the Ordinance, he is incapable of amending the complaint to state a cause of action.

DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of April 17, 2014, overruling PSAV's demurrer to the UCL cause of action alleged in Solares's class action complaint, and to enter a new and different order sustaining the demurrer without leave to amend. PSAV is awarded costs on appeal. (Cal. Rules of Court, rule 8.493(a)(1)(A).)


**CERTIFIED FOR PUBLICATION**




ALDRICH, J.



We concur:




KITCHING, Acting P. J.




KUSSMAN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.

15