**Paul M. DAVIS, et al., Plaintiffs,**

**v.**

**RIVERSOURCE LIFE INSURANCE COMPANY, et al., Defendants.**

**Case No. 16–cv–02801–JSW**

United States District Court,
N.D. California.

Signed 02/21/2017

Andrew S. Friedman, Francis Joseph
Balint, Jr., Bonnett Fairbourn Friedman &

Balint, P.C., Phoenix, AZ, Michael Aaron Levy, Ingrid M. Evans, Evans Law Firm, Inc., San Francisco, CA, for Plaintiffs.

Jeffrey Monroe Grantham, Maynard Cooper Gale, PC, Birmingham, AL, Linda Beth Oliver, Maynard Cooper & Gale, LLP, San Francisco, CA, Thomas Julian Butler, Whatley Drake & Kallas LLC, Birmingham, AL, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT

JEFFREY S. WHITE, United States District Judge

Now pending before the Court is Defendants RiverSource Life Insurance Company ("RiverSource") and Ameriprise Financial Services, Inc.'s ("Ameriprise") motion to dismiss Plaintiff Paul M. Davis's First Amended Complaint ("FAC"). Having carefully reviewed all parties' papers and considered the arguments and the relevant legal authority, and good cause appearing, the Court finds that all pending motions are appropriate for decision without oral argument. *See* N.D. Cal. Civil L.R. 7–1(b). The Court hereby rules as follows.[1]

### BACKGROUND

Plaintiff Paul M. Davis alleges that he is an individual resident of the County of San Mateo, California, who was over the age of 65 at all times relevant to this action. (FAC ¶ 10.) Davis "was and still is" the sole trustee, settlor, grantor, and direct, non-contingent beneficiary of the Paul M. Davis Revocable Trust of 2011 ("Trust"). (*Id.* ¶ 11.)

Plaintiff alleges that "[d]uring December 2013 through February 2014," he was solicited by Defendants' licensed agent to purchase deferred annuity contracts. (*Id.* ¶ 27.) He purchased six deferred annuity policies from RiverSource. (*Id.*) "Plaintiff funded all six policies through payments made to Defendants by the Trust. For all six policies, Plaintiff is the annuitant." (*Id.*)

Plaintiff alleges that the deferred annuity contracts provide a 10–day "free look" period, not a 30–day "free look" period as required by California Insurance Code Section 10127.10. (*Id.* at ¶¶ 23, 28.) Additionally, Plaintiff alleges that Defendants did not, in their deferred annuity contracts, disclose the surrender information to California seniors in the manner required by California Insurance Code section 10127.13. (Id. ¶¶ 24, 29.)

Plaintiff filed the Complaint in this action on May 24, 2016. (Dkt. No. 1.) On or about May 25, 2016, Plaintiff "withdrew needed funds from one of the six annuity policies" and "incurred a surrender charge of $303.99." (FAC ¶ 27.) After Defendants filed a motion to dismiss, Plaintiff filed the FAC on August 10, 2016. (Dkt. Nos. 28, 31.) In the FAC, Plaintiffs allege two causes of action: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code ¶ 17200 *et seq.* ("UCL"); and (2) Financial Elder Abuse, Cal. Welf. & Inst. Code ¶ 15600 *et seq.* This motion to dismiss followed.

The Court shall address additional facts as necessary in its analysis.

### ANALYSIS

#### A. Legal Standards Applicable to the Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The

---

1. The Court GRANTS Plaintiff's unopposed request for judicial notice. (Dkt. No. 45.) *See*

Fed. R. Evid. 201(b).

Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

■ Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). From these decisions, the following "two principles" arise: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (a complaint must make clear "who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

■ As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). For example, the Court can take judicial notice of the existence of public records or court documents, but it may not take judicial notice of disputed facts in those documents. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co.*, 393 F.Supp.2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201.

■ If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246–47 (9th Cir. 1990).

**B. Plaintiff Has Alleged that He Is Within the Class of Persons Protected by the California Insurance Code, and May Sue in his Individual Capacity.**

■ Defendants contend that Plaintiff is not within the class of persons protected by California Insurance Code sections 10127.10 and 10127.13 because the plain language of those sections does not apply to annuities purchased by trusts. Defen-

dants rely on *Audio Visual Services Group, Inc. v. Superior Court*, 233 Cal. App.4th 481, 494, 182 Cal.Rptr.3d 748 (2015). In *Audio Visual Services Group*, the California Court of Appeal held that audiovisual workers, for whom the payment of a gratuity did not constitute part of their wages, were not within the class of hotel workers a city council intended to protect in enacting an ordinance requiring hotels to pass on service charges. *Id.* at 491–92, 182 Cal.Rptr.3d 748.

In the FAC, Plaintiff alleges that Plaintiff purchased the six deferred annuity policies during December 2013 through February 2014. (FAC ¶ 27.) At that time, California Insurance Code section 10127.10 provided, in part:

> Every policy of individual life insurance and every individual annuity contract *that is initially delivered or issued for delivery to a senior citizen* in this state on and after July 1, 2004, shall have printed thereon or attached thereto a notice stating that, after receipt of the policy by the owner, the policy may be returned by the owner for cancellation by delivering it or mailing it to the insurer or agent from whom it was purchased. The period of time set forth by the insurer for return of the policy by the owner shall be clearly stated on the notice and this period shall be not less than 30 days. . . .

Cal. Ins. Code § 10127.10(a) (version effective Jan. 1, 2005–Dec. 31, 2014) (emphasis added).[2]

During the same time period, California Insurance Code section 10127.13 provided:

> All individual life insurance policies and individual annuity contracts *for senior citizens* that contain a surrender charge period shall either disclose the surrender period and all associated penalties in 12–point bold print on the cover sheet of the policy or disclose the location of the surrender information in bold 12–point print on the cover page of the policy, or printed on a sticker that is affixed to the cover page or to the policy jacket. The notice required by this section may appear on a cover sheet that also contains the disclosure required by subdivision (d) of Section 10127.10.

Cal. Ins. Code § 10127.13 (version effective Sept. 29, 1994–Dec. 31, 2014) (emphasis added).

■ When interpreting a statute, the Court looks "first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)). Here, the plain language of Section 10127.10 covers individual annuity contracts that are "initially delivered or issued for delivery to a senior citizen." The plain language of Section 10127.13 covers individual annuity contracts "for senior citizens." Defendants try to metamorphose this language into a limitation to policies *purchased by* senior citizens, but this is not the plain language of either statute. On the contrary, these statutes seem intended to protect senior citizens who decide to purchase individual annuity contracts, without specifying any method of payment.

This conclusion is reinforced by the fact that Section 10127.10 includes a limitation that its terms do "not apply to life insurance policies issued in connection with a credit transaction or issued under a contractual policy-change or conversion privilege provision contained in a policy" or "to

---

**2.** Except as explicitly stated, all references in this order to Sections 10127.10 and 10127.13 refer to the versions applicable between December 2013 and February 2014.

contributory and noncontributory employer group life insurance, contributory and noncontributory employer group annuity contracts, and group term life insurance, with the exception of subdivision (f)." Cal. Ins. Code § 10127.10(e). This limitation would be, in part, redundant if the statute on its face did not apply to contracts purchased through an entity on behalf of an individual.

The Court's conclusion is further reinforced by the legislative history of the statute. The parties agree that in enacting these protections, the legislature sought to protect vulnerable senior citizens, who have been targets of unsuitable financial and insurance products and may not have the resources to protect themselves without adequate disclosures. (Mot. at 4–5; Opp. at 6–7.) The legislative history is of little persuasive value in the present context, however, because it is silent regarding whether the legislature's concerns extended to purchases made through a revocable personal trust. (*See id.*; *see also* Dkt. Nos. 38–1, 38–2, 45–2 (Senate Insurance Committee Bill Analyses and Senate Judiciary Committee Report).)

■ In California, for most purposes, there is no distinction between property owned by a revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor. *Carolina Cas. Ins. Co. v. L.M. Ross Law Group, LLP*, 184 Cal.App.4th 196, 208, 108 Cal.Rptr.3d 701 (2010) (citations and quotations omitted). The trust is simply an "estate planning device" and property transferred to, or held in, the trust is deemed to be property of the owner. *Id.* Transfer between the two is not a change in ownership. *Id.* Under this circumstance, the Court finds that a trustee's fiduciary duties to the settlor and beneficiaries of a trust do not exempt a senior citizen who is the settlor, trustee, and beneficiary of a revocable *inter vivos* trust from the protections afforded by the California Insurance Code to senior citizens. (*See generally* Mot. at 6–7, Reply at 6–7 (discussing duties of trustees)).

In the FAC, Plaintiff alleges that he is the sole trustee, settlor, and grantor of the Trust, as well as its sole direct, non-contingent beneficiary. (FAC ¶ 11.) Consistent with the language of Section 10127.13, Plaintiff alleges that he purchased the policies "for" himself, albeit through payments made by the Trust. (*Id.* ¶ 27.) Consistent with Section 10127.10(a), he also alleges that the policies were "delivered" to him in Marin County, California. (*Id.*) The Court finds that Plaintiff has plausibly alleged that he is within the class of persons protected by California Insurance Code sections 10127.10 and 10127.13.

Defendants note that "[o]ther statutes upon which Plaintiff relies comport with a reading of Sections 10127.10 and 10127.13 not applying to trusts. For example, Plaintiff purports to bring a claim for treble damages under California Civil Code Section 3345 ...." (Mot. at 4.) Defendants analyze Civil Code Section 3345 only as a persuasive reference regarding the interpretation of Insurance Code Sections 10127.10 and 10127.13, but do not separately challenge Plaintiff's request for treble damages pursuant to Section 3345. Section 3345 does not alter the Court's analysis of the foregoing issue. Accordingly, the Court does not reach the issue of the applicability of Section 3345 at this time, without prejudice to the issue being raised at an appropriate stage of the litigation.

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss on this basis. Plaintiff has adequately alleged that he is within the class of persons protected by the California Insurance Code.

For the same reasons discussed above, the Court also DENIES Defendants' motion to dismiss on the basis that Plaintiff, in his individual capacity, is not the real party in interest for the purpose of bringing this action. (Mot. at 14–15; Reply at 12–13.) In the FAC, Plaintiff alleges that he was personally solicited to purchase the deferred annuity policies and did so individually, albeit through his personal trust. At this stage of the case, Plaintiff has stated a claim under Federal Rules of Civil Procedure 8 and 12 in both his individual capacity and as trustee. The Court declines to speculate about the relevance of this issue at the class certification or summary judgment stages of the case, but DENIES Defendants' motion to dismiss on this issue.

## C. Plaintiff Lacks Standing Under the UCL.

■■■ Defendants contend that Plaintiff lacks standing under California's Unfair Competition Law. The UCL restricts private standing to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To meet this standard, a plaintiff bringing suit under any prong of the UCL must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011) (emphasis in original). Where a case is "is based on a fraud theory involving false advertising and misrepresentations to consumers," or material omissions, the plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud ac-

tions." *Id.* at 326–27, 120 Cal.Rptr.3d 741, 246 P.3d 877 (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 306, 325 n.17 (2009)).

■■■ In the FAC, Plaintiff expressly disclaims any claim based on fraud. (FAC ¶ 5.) He alleges only that Defendants violated the UCL's prohibition of any "unlawful ... business act or practice," not that Defendants' business acts or practices were unfair or fraudulent. Cal. Bus. & Prof. Code § 17200. However, a plaintiff also "must establish reliance under the unlawful and unfair prongs where, as here, the gravamen of the claim is based on alleged misrepresentation." *In re Coca–Cola Prods. Mktg. and Sales Practices Litig. (II)*, No. 14–md–02555–JSW, 2016 WL 2930964, at *3 (N.D. Cal. May 19, 2016). Moreover, the UCL's requirement of "a causal connection" applies regardless of whether Plaintiff alleges a claim sounding in fraud. *Kwikset*, 51 Cal.4th at 322, 326, 120 Cal.Rptr.3d 741, 246 P.3d 877; *see also, e.g., Wilson v. Frito–Lay N. Am.*, 961 F.Supp.2d 1134, 1144–45 (N.D. Cal. 2013) ("According to Plaintiffs, unlawful conduct is the only necessary element for UCL unlawfulness liability, unlike the fraudulent or unfairness prongs which require particularity as to reliance and injury ... This is incorrect.").

■■■ In his UCL claim, Plaintiff alleges three allegedly unlawful acts or practices. First, he alleges that Defendants failed to provide notice of the 30–day "free look" period in deferred annuity contracts sold to California seniors, in violation of California Insurance Code Section 10127.10. (FAC ¶ 52(a).) Second, he alleges that Defendants failed to provide statutorily-required notice regarding surrender charges in deferred annuity contracts sold to California seniors, in violation of California Insurance Code Section 10127.13. (*Id.* ¶ 52(b).) Third, he alleges that Defendants collected surrender penalties despite their

failure to provide the disclosures regarding the free-look period and the surrender penalties required by Sections 10127.10 and 10127.13. (*Id.* ¶ 52(c).) The alleged unlawfulness of this third practice is grounded in the same two statutory violations as the first two practices.

Plaintiff further alleges that "[a]s a result of Defendants' practices, Plaintiff and the Class have suffered injury-in-fact, including but not limited to, incurring financial losses, including access to needed funds, surrender fees, and penalties that were not properly disclosed as required by statute, that Plaintiff and Class members would not otherwise have incurred." (*Id.* ¶ 56.) The Court finds that Plaintiff has adequately alleged economic injury and a loss of money or property under the UCL, because he alleges that he spent money on the deferred annuity policies and now lacks access to needed funds.

Plaintiff has failed, however, to allege that his economic injuries were the "result of" Defendants' alleged violations of Sections 10127.10 and 10127.13. Cal. Bus. & Prof. Code § 17204. He does not allege that Defendants' statutory noncompliance caused him to purchase annuities that he would not have purchased, or to pay more than he would have paid, had Defendants complied with the Insurance Code. Nor does he allege that he wished to return the policies within 30 days but was deterred by the inadequate "free look" period. To be clear, the alleged unlawfulness is not the inclusion of surrender charges in the policies. Rather, it is the failure to disclose those surrender charges and to provide a "free-look" period in the manner required by the statute. It is from these allegedly unlawful acts that the economic injury must result.

Plaintiff's allegation that, after filing the Complaint, he did in fact pay a surrender charge of $303.99 does not alter this analysis. The Court does not reach the question,

inadequately briefed, of the significance of this charge being incurred after the commencement of this action. Either way, Plaintiff does not allege that the charge would not have been imposed, or would have been less, had Defendants complied with the Insurance Code when he purchased the annuities. Again, he also does not allege that he would not have purchased the policies and thus, later, paid the surrender charge, but for Defendants' alleged statutory noncompliance.

The Court therefore GRANTS Defendants' motion to dismiss Plaintiff's first cause of action, for violation of the UCL. The Court GRANTS leave to amend, so that Plaintiff may attempt to allege facts supporting the causation required by the UCL. The Court reminds Plaintiff that in a class action, the named plaintiff must satisfy the requirements of standing. *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (internal quotations and citations omitted). Plaintiff is cautioned that if he files a second amended complaint, he must plainly allege which injuries he personally experienced, as opposed to absent class members.

### D. Plaintiff States a Claim for Financial Abuse of an Elder.

#### 1. Resulting Physical Harm or Pain or Mental Suffering

██ Defendants contend that Plaintiff's second cause of action, for "financial elder abuse," fails to state a claim because Plaintiff does not allege "resulting physical harm or pain or mental suffering" under California Welfare and Institutions Code Section 15610.07(a).

The California Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code Sections 15600 *et seq.* ("Elder Abuse Act") contains two definitions that overlap. The first definition is in Section 15610.07. At the time relevant to this case, that section provided:

> "Abuse of an elder or a dependent adult" means either of the following:
> (a) Physical abuse, neglect, *financial abuse,* abandonment, isolation, abduction, *or other treatment with resulting physical harm or pain or mental suffering.*
> (b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering

Cal. Welf. & Inst. Code § 15610.07 (version effective through Dec. 31, 2015) (emphasis added). This version of Section 15610.07 is ambiguous regarding whether "resulting physical harm or pain or mental suffering" is required only for "other treatment" or also for "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, [and] abduction." At least one California Court of Appeal held that "for conduct to qualify as elder abuse, it must cause elder to suffer physical harm, pain or mental suffering." *Carter v. Prime Healthcare Paradise Valley LLC,* 198 Cal. App.4th 396, 409, 411, 129 Cal.Rptr.3d 895 (2011); *see also Derry v. Jackson Nat'l Life Ins. Co.,* No. 11-cv-00393-DOC, 2011 WL 7110571, * *6–7 (C.D. Cal. Oct. 5, 2011) ("Plaintiffs are also required to allege physical harm or pain or mental suffering to support a claim for financial elder abuse.") (quoting *Siemonsma v. Mut. Diversified Employees Fed. Credit Union,* 10–cv–01093–DOC, 2011 WL 1485979, *5 (C.D. Cal. Apr. 19, 2011)).

A separate provision, Section 15610.30(a), contains a different definition of "financial abuse" that does not require physical harm, pain, or mental suffering. At all relevant times, that section provided:

> "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in [a separate statutory section].

Cal. Welf. & Inst. Code § 15610.30 (versions effective Jan. 1, 2009–Dec. 31, 2013 and Jan. 1, 2014–present).

Section 15657.5 of the Welfare and Institutions Code, which provides remedies against a defendant who is liable for financial abuse of an elder, incorporates (and at all relevant times, incorporated) the definition of financial abuse in Section 15610.30—the section that does not require "physical harm or pain or mental suffering." Section 15657.5 is silent regarding the role, if any, of section 15610.07 in connection with such a claim. One California Court of Appeal held that a claim under Section 15657.5 may be brought by plaintiffs who satisfy the definition of " 'financial abuse' of an elder or dependent adult" under Section 15610.30, even if they expressly disclaim any claim of "physical harm or pain or mental suffering" that may, at that time, have been required under the definition of "abuse of an elder or a dependent adult" under Section 15610.07.

*Bonfigli v. Strachan*, 192 Cal.App.4th 1302, 1316, 122 Cal.Rptr.3d 447 (2011).

After the time relevant to this case, the California legislature amended Section 15610.07 to remove "financial abuse" from the types of abuse requiring "physical harm or pain or mental suffering" and to expressly incorporate the definition of financial abuse set forth in Section 15610.30. Cal. Welf. & Inst. Code § 15610.07 (version effective July 1, 2016). Plaintiff points out that the Senate Judiciary Committee Report on this amendment describes this revision to the definition as intended to "clarify that financial abuse does not require a showing of resulting physical harm or pain or mental suffering." (Senate Judiciary Committee Report on SB 196, 2015–2016 Regular Session, Plaintiff's RJN, Exh. B, at 6.) As a clarification rather than a change, Plaintiff contends, the amendment sheds light, retroactively, on the earlier version of Section 15610.07 applicable to Plaintiff's claims, making clear that "physical harm or pain or mental suffering" is not required for Plaintiff's claim of financial elder abuse.

The Court notes that Plaintiff's extensive use of "*et seq.*" in the FAC in citations to the Elder Abuse Act make it difficult to definitively rule out Section 15610.07 as a basis for Plaintiff's claims. In the FAC, however, Plaintiff makes no explicit reference to that section. Rather, like the plaintiffs in *Bonfigli*, Plaintiff specifically cites Sectioons 15657.5 and 15610.30(a) as the statutory basis for his financial elder abuse claim. These sections do not require a showing of "physical harm or pain or mental suffering." Like the *Bonfigli* court, this Court finds that Plaintiff's financial elder abuse claim may go forward based on the definition of " 'financial abuse' of an elder or dependent adult" in Section 15610.30, without any requirement of "physical harm or pain or mental suffering." The Court finds that this interpretation is supported

by the California legislature's subsequent clarifying amendment to Section 15610.07, even though that amendment is not directly applicable to the time period at issue in this case. The Court therefore DENIES Defendants' motion to dismiss Plaintiff's claim under the Elder Abuse Act.

### 2. Recklessness, Oppression, Fraud, or Malice

Defendants further argue that Plaintiff has failed to plead the type of "egregious conduct" that is required to trigger the heightened remedy provisions of California Welfare and Institutions Code Section 15657.5(b), which requires a showing of "recklessness, oppression, fraud, or malice in the commission of the offense." *See, e.g.*, *Covenant Care, Inc. v. Superior Court*, 32 Cal.4th 771, 789, 11 Cal.Rptr.3d 222, 86 P.3d 290 (2004) ("In order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages."). This argument relates only to the heightened remedies available under Section 15657.5(b), not to Plaintiff's ability to state a claim under the Elder Abuse Act.

In any event, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and all other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff has disclaimed any fraud claim. The question of Defendants' recklessness or malice relates to Defendants' state of mind, and the Court finds that this state of mind has been adequately, if generally, alleged in the FAC. The Court therefore DENIES Defendants' motion to dismiss Plaintiff's Elder Abuse Act claim on this basis as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss the FAC. The Court DISMISSES Plaintiff's first claim for relief, under the UCL, but DENIES the remainder of Defendants' motion to dismiss.

Because the Court cannot say that amendment would be futile, the Court GRANTS Plaintiff leave to amend his UCL claim, if he can do so in good faith and in compliance with his obligations under Federal Rule of Civil Procedure 11. Plaintiff may file a Second Amended Complaint by March 14, 2017. Regardless of whether Plaintiff files a Second Amended Complaint or elects to proceed on the First Amended Complaint, Defendants' response to the operative complaint shall be due by April 4, 2017.

**IT IS SO ORDERED.**